Good morning. May it please the Court. My name is Hillary Hahn and I'm appearing on behalf of the petitioners in this case. Because the procedural history of this case is somewhat lengthy, I wanted to begin by laying out what we believe the issues are in this case and how we believe the Court should resolve those issues. The first issue is whether the substantial evidence supports the Board of Immigration Appeals finding or the immigration judges finding that Mr. Chavez and Mr. Loya did not establish their eligibility for withholding of removal or protection under the Torture Convention, either based on the past persecution they suffered or independently of that by not establishing that they face future threats to their life or freedom. Excuse me a second. Is there an echo going on with the microphone or something? Go ahead. I can, yeah, just step back. It seemed to me a little bit, kind of an echo. Yeah. Okay. Go ahead. I'm sorry. I don't think it's you. I think it's you. We won't steal your seconds. No. I'm looking at them, taking them away. Yeah. Get them back. The second issue is whether the Board abused its discretion in denying petitioners' motion to reopen. The government concedes that, don't they? They concede. Well, no, they don't concede that the Board abused its discretion in denying the motion to reopen, no. They believe that Mr. Chavez and Mr. Loya failed to establish prejudice. That's their position before this Court. But I guess what you're referring to, I think, Your Honor, is that before the Board of Immigration Appeals, the government didn't oppose the motion. They explicitly took the position that they didn't oppose the motion. Can we stop there just for a second so that I make sure I'm on the same page with you? The decision of the Board of Immigration Appeals was dated July 20, 2004. And the final sentence of that is, finally as noted, first of all, they go through the basis of the reopening and effective assistance of counsel. Then the BIA says, finally as noted by the immigration judge, you haven't chosen a lessening in the official harassment of homosexuals in Mexico, Exhibit 3. My reading of the record would indicate Exhibit 3 with this document here, which is called Mexico Profile of Asylum Claims and Country Conditions. It's dated from the Bureau of Democracy, Human Rights, and Labor, June 1997. Am I correct on that? Yes, Your Honor. And in that, on page, it's got to be page of the record or the excerpts 654 or page 6 of this document, there is a Section 2 entitled Homosexuals, and there's two paragraphs basically summarizing that the Mexico City Embassy finds no evidence of systematic official persecution of homosexuals, etc. Right. Now, attached to the petition, the motion to reopen before the BIA, I found an Exhibit K, which is called Mexico Update on Treatment of Homosexuals. Is that correct? Yes, Your Honor. And that is, looks like 33 pages. Yes. Total study in comprehension of homosexuality in Mexico. Is that correct? That's correct. And if I'm correct in reading the order of the BIA of July 28, 2004, the BIA did not consider that or did not discuss that anywhere that I can find on the record? That's correct, Your Honor. Okay. Now, what's the effect of that? Well, I would just note one thing first about the profile, the Department of State document that you referred to. Although they say that there's no evidence that systematic official persecution of homosexuals exists, the next part of that sentence, it's in the same sentence, says that violence against homosexuals is not uncommon. And so I think that that document... Are you talking about Exhibit 3? Exhibit 3, exactly. So I think that document, even in and of itself, demonstrates that the petitioners can meet their burden of showing future harm. Well, the only problem with that is that the Exhibit 3 was considered by the IJ. We're now in a motion to reopen. Right. And a motion to reopen, what was considered before, is not sufficient to grant the motion. But what was attached to the motion to reopen, if I'm not wrong again, was Exhibit K, which was something new relative to homosexuality in Mexico. Correct. Yeah. And we agree that that document is highly probative. Are you familiar with our Adonis case? Yes. Okay. Now, does this case fit with that attachment, K fit Adonis? We did. And we argued that. We argued two things with regard to the motion. First, that the case should be remanded so that the board would consider not only that document, but also our entire argument as to the immigration judge's, quote, alternate finding. So, yeah, we agree that remand would be appropriate for that purpose, so they would consider what we argued, as in Adonis. And, you know, and so our backup argument is just that if even on the record that already existed, even putting aside that 1999 attachment, K, that the record still would compel a conclusion that they met their prima facie eligibility requirements. That's a tough sell, right? You would agree with that? Well, not necessarily, Your Honor. Because I think that when you review, I think that in reviewing the denial of the motion to reopen, the court has to independently determine whether there is prejudice, whether they establish prima facie eligibility for asylum. And just because the immigration judge didn't believe that they had done so doesn't mean that he was correct. And so I think that that's a different standard than saying it would compel the conclusion. I don't think you need to meet that standard to prevail on a motion to reopen on abuse of discretion, correct? Right. I agree. But whatever the standard is, I mean, frankly, we believe that you know what? Whatever the standard is, at least in this Court, the standard is everything. Right. And so we're we need to fit it in these little boxes given to us by the Supreme Court of the statute. So the real question is, was there an abuse not to reopen given the evidence and given that this single judge denial, we can't divine an answer to the second part of the IJ's opinion? Right. Now, don't we have to what do we do about the pending two petitions of the two cousins? In other words, do we hold those pending the motion to reopen? Because I have no idea what the BIA's if in fact or donors controls this. In fact, the motion to reopen should have been granted and it goes back. What do we do with the two petitions? Well, I think I think there are two options. One is just to, as you said, hold those in abeyance while remand to the board to actually, you know, to adjudicate the motion in accordance with or consider all the evidence. The other option would be since since the other petition is before the court is to make a determination as to whether the record compels the conclusion that they've established the eligibility of eligibility for withholding of removal and remand, you know, alternatively remand on that basis as well. Because we believe that given the past harm that Mr. Chavez and Mr. Loya suffered, that, you know, under the case law of the circuit, that cumulative harm definitely rises to the level of past persecution, even under a substantial evidence standard. Do you want to reserve the remainder of your time? I will, Your Honor. Thank you. Good morning, Your Honors. Patricia Smith representing the Respondent, Albert Gonzalez. Although Petitioners raise issues with respect to the immigration judge and board's denial of their asylum withholding claims as well as their request for protection under CAT and the board's denial of their motion to reopen, the only issues the court has jurisdiction over are the denial of the withholding of removal claim and the denial of the motion to reopen. There's no jurisdiction of the claims that were not brought with timely? With respect to the CAT claim, there's no exhaustion on that. As we set forth in our brief, that was not presented initially to the board. Petitioners, the reply brief indicated that it was. However, the first sentence of the appeal brief indicated that they were appealing the immigration judge's decision denying their claims for asylum withholding of removal in CAT. The only other reference in their 48-page brief to the CAT claim was that both Petitioners had applied for CAT. The brief solely focuses on establishing that they had established past persecution, and then assuming they established past persecution, that the they were entitled to the presumption that they had a well-founded fear as well as that it was more likely than not. So the issue of CAT was not addressed to the board. So we argue that the court does not have jurisdiction over that issue. Turning to the issue of past persecution, as the immigration judge determined, the incidents alleged by Petitioners amounted to discrimination and harassment and not persecution. In their briefs to this Court, Petitioners have argued that what they refer to as the knife attack constitutes past persecution. But as we've indicated, the evidence is not sufficient to establish that when someone was defending himself and cut his hand with a knife, that that would be sufficient under the law of this circuit to constitute past persecution. Additionally, they indicate that the purported threat that Petitioners, Chavez or Gelles, received in that fight, and that the general warnings to gays that was left on a friend's mirror when the friend was killed would constitute past persecution. Similarly, such threats would not under the law of this circuit constitute past persecution. It does not rise to that level. Petitioners also argue that the – when Petitioners or Chavez or Gelles were reportedly told to perform oral sex, that that constituted past persecution. As we've indicated with that, the evidence in the record as well as two scans to suggest that being told simply to perform oral sex would be sufficient to constitute past persecution under the law of this circuit. Cumulatively, as well as taking all of those into account, as well as the – those incidents as well as the other incidents of discrimination and harassment set forth, we believe that there was no past persecution. The record evidence certainly does not compel a finding of past persecution. And again, I mean, we'll look – as I've indicated before, we don't believe the Court has jurisdiction over asylum, but because of the way the immigration judge ruled on withholding of removal, he specifically looked at the asylum issues of past persecution and well-founded fear. And that's why, in our analysis, we also do that. With respect to Petitioner Loyaloya, he also testified to various incidents of harassment and discrimination. With respect to Petitioner Loyaloya, Petitioners argue that the one beating he received where three-member poorly attacked him and attempted to rape him was severe enough to constitute persecution. But again, we don't believe the record evidence compels such a finding. The evidence was scant on that. He indicated that he was tempted to be raped, but there was no indication of any physical injury or any significant harm that occurred to him from such incident. Similarly, with Petitioner Loyaloya, we don't think cumulative events would show past persecution. Turning to the issue of well-founded fear of future persecution, the immigration judge concluded that Petitioners failed to meet the objective test of establishing that they had a well-founded fear of persecution. And they specifically cited to contrary conditions evidence indicating, among other things, that there is no evidence of systemic official persecution of homosexuals in Mexico, that there has been a reduction of prejudice against homosexuals. And additionally, the immigration noted that Petitioner Loyaloya had made numerous trips to El Paso. The immigration judge found that because Petitioners had not thus established a well-founded fear of future persecution, they also necessarily had not met the burden of establishing that they had a – that there was a clear probability that their life or freedom would be threatened if they were returned to Mexico, and thus they had not established that they were eligible for withholding of removal. Petitioners have not identified any record evidence that would compel a reversal of the IG's findings with respect to this issue. And thus, we believe the record sufficiently supports the finding by the immigration judge. In their brief to this Court, the Petitioners raised several arguments with respect to withholding of removal. However, as we pointed out, these were not made to the Board, and again, because they were not made to the Board, Petitioners failed to exhaust their claims, and they are not issues that can be considered by this Court. The only issue, as I indicated before, that they made to the Board in their appeal was that they had established past persecution, and thus they were entitled to the presumption that they had a well-founded fear of persecution and that they had established it was more likely than not that they would be persecuted. They never separately indicated that they had shown that it was more likely than not that they – that their life of freedom would be threatened if they were returned to Mexico. Let me get to what's bothering me here, and that has to do with the motion to reopen. The Board basically says they have provided nothing to address this alternate finding, and then goes on to note the lessening of an official harassment, which references, I believe, the document that Judge Brunetti first began with. But this one paragraph denial taken on its face actually is contrary to the record. Now, whether they have made out a prima facie case is another thing we would have to consider, but how could the Board say in good faith that they provided nothing with respect to the judge's alternate findings? I guess two points there, Your Honor. First, with respect to the motion to reopen that was filed with the Board, the whole basis for that motion to reopen was ineffective assistance of counsel. And they argued simply based on the fact that there was ineffective assistance of counsel, they had made out a prima facie case of eligibility. That is not sufficient in this case, specifically because the IJ had an alternative finding. So just because the ineffective assistance of counsel may have caused them to file their application untimely, that does not show a prima facie case for eligibility. Well, but doesn't that go then to the final sentence that I quoted? In other words, if we're going to go to the alternative finding, then the question about the status of homosexual in Mexico becomes an issue that was discussed by the IJ in relying on Exhibit 3. Now they attach, if I'm not incorrect, as we discussed, they attach to their motion to reopen Exhibit K, which is an extensive study. Now, that wasn't mentioned by the BIA, and if we have to follow our own law, Ardonis says that the BIA making its decision must consider and discuss everything that's presented on a motion to reopen. Apparently, they did not consider or discuss because it's not in their decision. And I would argue, Your Honor, that the Petitioner did not actually raise that on his motion to reopen. The motion to reopen was focused on ineffective assistance of counsel, and it was because of the untimeliness. They dropped a footnote in there which simply said the IJ made an alternative finding. We're not sure exactly whether he was talking about well-founded fear of future persecution or whether he was talking about withholding. And they did not ---- Can you tell me which footnote that was? Yes, Your Honor. Footnote 4. It's on the record at page 20. I mean, it's a page. Footnote is a page. Yes, Your Honor. But within that footnote, all they do is, again, say we established past persecution and that they're entitled to a presumption. They don't show any kind of new evidence that would warrant a motion to reopen. What does Exhibit K? What does it say? The one document they attach, which, again, is not the basis for the motion to reopen based on ineffective assistance of counsel. They've attached affidavits all based on the untimeliness. It's kind of an aside they have in their motion to reopen. They say here's this document. What they say with that document is it doesn't rebut the presumption of past persecution. They don't argue, they don't say, and the document doesn't show that, in fact, there was anything different in that document which would have changed the or could change the I.J.'s decision that they had not established a well-founded fear of persecution. They don't argue it here, and the document doesn't show it. No. Just a second. There's a paragraph at the bottom of 14 that says, moreover, because of Mr. Johnson R.T.'s ineffectiveness, the I.J. was unable to consider a number of important country conditions. And then they go through the 1997 report and then the updated November 1999. Now, is that what I have here? I believe that is what you have there, Your Honor. Now, how much does he have to say? Well, with respect to the ineffectiveness, the whole rest of the argument, the affidavits that were submitted, the meeting of the Lysada requirements all focused on the untimeliness of the asylum application. There was nothing about the counsel not submitting certain documents. No. What he said, though, was after the untimeliness, there's a whole section that basically says the evidence submitted with this motion is material and makes that a prima facie case for asylum eligibility. And then there's a couple pages, and then there's this footnote that's the equivalent of a couple pages, because it's a single-spaced one page, in which he brings this to the board's attention that because of these documents, K, and then he mentions others in his text. Now, it's really not for us to weigh them, but as I hear your argument, you're saying that he didn't argue it well enough or he didn't argue enough of it, even though he argued it? The Lysada requirements, which they attempted to comply with by submitting affidavits, opposing counsel, all dealt with the untimeliness. They don't they didn't deal with the issue of the attorneys should have submitted another document. The board doesn't deal with the issue of they should have submitted another document. It's all relating to the whole issue of untimeliness. You know, he says he was didn't consider a number of important country condition documents, and then he goes on to list them. Right. But the rest of the brief and all of the supporting documents that they submit with respect to their arguments that there was ineffective assistance from counsel all relate to the untimeliness. They didn't send a letter to a petitioner saying you forgot to submit certain documents. All of that related to the untimeliness. Just, I don't think just by dropping a footnote saying another document could have been introduced would be sufficient to meet the Lysada requirements or anything else. And I think the board did not have to address any of this, even though the board started to talk about some of the country conditions evidence. Because here the whole claim was based on the untimeliness, petitioner couldn't show prejudice, because the immigration judge in the first instance dealt with he provided an alternative asylum finding. And because he provided an alternative asylum finding, there could not be prejudice just because they did not file their application timely. Well, are you suggesting that we can ignore the teachings of Ordonez? Ordonez is strong. I mean, it just flat out says that if the BIA fails to consider any information which was included in the motion to reopen, that there's a due process violation. And it's not as though it was just attached as an afterthought. As the judge stated, footnote four is a whole page. So we're just going to ignore that and say, well, Ordonez doesn't apply because what? No harm, no foul? They're not going to make it anyway? Is that it? I mean, I haven't read Ordonez recently, Your Honor, so I can't precisely say what I would argue that it says. But I do think it's – Well, I think Ordonez is – we have to do – that's our law, and it's very, very specific. But I think you have to look at what is the basis for the motion to reopen. And the basis for the motion to reopen is ineffective assistance of counsel based on the untimeliness. Just because they drop a footnote referenced in their document, that doesn't change what the motion to reopen is. Dropping a footnote – I have a problem. Everybody drops footnotes. I don't drop footnotes. But if you drop a footnote and you bury everything that you have in a footnote, you've got to consider it. And so are we to say that because this is a footnote and because it's an afterthought of the timeliness argument we're going to disregard it when they actually reference the ineffectiveness in not considering the conditions in Mexico with regard to homosexuals? How do we disregard that? Well, two things. One, as I've already – as I've tried to argue, the whole motion is based on the untimeliness. They drop a footnote. You made that – I understand that. When you – if you then go ahead and even – what the board said is they didn't address the alternative findings. The board only had to drop – Are you suggesting that we ignore the alternative finding of the IJ, that we rest our opinion on the fact that it was untimely and just discard the alternative finding? What do we do with that alternative finding? No. No. The immigration judge had an alternative finding, which in its initial board decision the board indicated its agreement with the IJ's decision. So all of that was there. They endorsed that alternative finding. That is our position, Your Honor. And here they did not turn that over. I mean, the other thing, again, with respect to this document, if Petitioners are attempting to show, in which they did, all they argued with respect to the document was it didn't show that the country conditions had changed such to rebut the presumption of past persecution. They did not argue in here that the document actually showed that they had a well-founded fear of persecution or might show, if it was presented to the IJ, that they had a well-founded fear of persecution. So we don't believe they presented those arguments to the board in the first instance. So we do think there are multiple reasons why that footnote and citing to that document in any way alters what the board would need to do in this case. Thank you. Thank you. The one brief point I want to make about the motion to reopen, I think it's already been, everything else has been said, is that when the government says that we attempted to comply with LOSADA or there's a question as to whether we complied with LOSADA, there's not. The board explicitly found that we had complied with LOSADA. They said the respondents appear to have met the requirements of matter of LOSADA in the board's opinion, correct? Right. All that means is you can go forward now with your ineffective counsel claim, which you claim you have. Right. Okay. And the other thing I just wanted to address was the issue of the withholding claim. Just because the government's still arguing that Mr. Chavez and Mr. Loya didn't establish past persecution. And I just want to run very briefly through what it is that we think cumulatively rises to the level of past persecution. In Mr. Chavez's case, he was cut with a knife while he was attacked. He was arrested on another occasion. He was stripped of his clothes. He was told to perform oral sex on a police officer. On other occasions, he was sexually harassed by coworkers because of his sexual orientation. And he finally left the country because he was a close friend of his who was also gay was murdered. In Mr. Loya's case, he was arrested on one occasion by the police and paraded around in an effort to humiliate him. On a second occasion, he was arrested by the police and beaten. Shortly after that, people who saw his photo in the newspaper targeted him, attempted to rape him, and didn't succeed, but did succeed in beating him badly. And he also testified that a number of his close friends who were gay were murdered. We think that under the Moshiri case, that that cumulative harm rises to the level of past persecution. That it compels that resolution. Thank you. Thank you. The case of Loya Loya v. Gonzalez is submitted.
judges: Brunetti, McKeown, King